UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION


DEBORAH M. F,[1]

                Plaintiff,

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

Case No. 6:19-cv-01292-YY

OPINION AND ORDER


YOU, Magistrate Judge:

      Plaintiff Deborah F. seeks judicial review of the final decision by the Social Security

Commissioner ("Commissioner") denying her application for Supplemental Security Income

("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383. This court has jurisdiction to

review the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(g)(3). For the

reasons set forth below, that decision is REVERSED and REMANDED for further proceedings.

      Plaintiff protectively filed for SSI on October 29, 2015, alleging disability beginning on

March 27, 2015. Tr. 173-82. Her application was initially denied on January 15, 2016, and upon

reconsideration on September 22, 2016. Tr. 68-81, 82-96. Plaintiff requested a hearing before

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of her last
name.

an Administrative Law Judge ("ALJ"), which took place on May 10, 2018. Tr. 34-67. After receiving testimony from plaintiff and a vocational expert, ALJ B. Hobbs issued a decision on August 22, 2018, finding plaintiff not disabled within the meaning of the Act. Tr.10-33. The Appeals Council denied plaintiff's request for review on June 15, 2019. Tr. 1-6. Therefore, the ALJ's decision is the Commissioner's final decision and subject to review by this court. 20 C.F.R. § 416.1481.

## DISCUSSION

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since October 29, 2015, the application date. Tr. 15. At step two, the ALJ determined plaintiff suffered from the following severe impairments: bilateral carpal tunnel syndrome, degenerative disc disease of the cervical spine, obesity, and asthma/chronic obstructive pulmonary disease ("COPD"). *Id.* The ALJ recognized mental impairments in the record, i.e., depression and anxiety, but concluded these conditions did not cause more than minimal limitations. *Id.*

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 17. The ALJ next assessed plaintiff's residual "capacity ("RFC") and determined she could perform sedentary work as defined in 20 C.F.R. § 416.967(a) with these exceptions: occasionally crawl; frequently crouch, stoop, and kneel; never climb ladders, ropes, or scaffolds; frequently handle and finger with the bilateral upper extremities; no toleration of exposure to extreme heat or extreme cold; and no toleration of concentrated exposure to airborne irritants. Tr. 18.

At step four, the ALJ found plaintiff unable to perform past relevant work. Tr. 25.

At step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, she could perform jobs that existed in significant numbers in the national economy, including billing/sorting clerk, document preparer, and credit card clerk. Tr. 26. Thus, the ALJ concluded plaintiff was not disabled. *Id*.

**DISCUSSION**

Plaintiff argues the ALJ erred by (1) rejecting her subjective symptom testimony; (2) improperly evaluating the medical opinion evidence of treating physicians Dr. Daniel Barrett and Dr. Susan Cho; and (3) not including the limitations caused by her alleged mental impairments in the RFC.

## II.    Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted).  A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible."  *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).  If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing."  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029.  SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms.  *Id.* at *1-2.  The ALJ must

examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

Here, the ALJ recounted plaintiff's claims and testimony in detail. Tr. 18-19. The ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but "[the claimant's] statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical record and other evidence in the record[.]" Tr. 19.

Plaintiff specifically challenges the ALJ's finding that her testimony as to her "most disabling impairments[,]" i.e., "cervical spine disease, carpal tunnel disorder, and asthma/COPD" is inconsistent with the record.[2] Pl. Br. 11.

### A.    Cervical Spine Disease—Neck Pain and Arm Numbness

Regarding plaintiff's neck pain and numbness, the ALJ found:

[I]n September 2015, the claimant underwent cervical discectomy and fusion at C5-6 due to herniation with myelopathy at this level. The claimant was noted for doing well postoperatively. . . X-rays showed solid fusion with no complications, and examination showed normal arm strength with symmetric sensation[.]
. . .
The claimant reported neck pain to Dr. McGirr in August 2016; however, MRI showed no changes that would explain her symptoms. Based on the claimant's complaints of numbness in her hands, Dr. McGirr referred her for studies. MRI showed postsurgical changes with significant improvement to only mild spinal canal stenosis at C5-6.

---

[2] Plaintiff contends "[t]he ALJ [mistakenly] provided an analysis of the severity of certain alleged symptoms, including difficulty swallowing, headaches, and foot and back pain" rather than an analysis of the inconsistencies with the medical record." Pl. Br. 10 (citing Tr. 20-21). However, plaintiff has not identified any inconsistencies or conflicts with the medical evidence relied on by the ALJ, i.e., plaintiff does not challenge the ALJ's finding that her testimony regarding difficulty swallowing, headaches, and foot and back pain conflicted with the objective medical evidence.

> The claimant reported neck pain in July 2017 when someone pulled her hatchback down on her neck.  However, x-rays showed only two-millimeter anterolisthesis of C4 in relation to C5, which is stable, intact C5-6 fusion, and no acute abnormality.

Tr. 21 (citing Tr. 347-57, 397-410, 1343-44, 1354-55).  The ALJ not only found plaintiff's testimony about the intensity and limiting effects of her symptoms relating to hand numbness and neck pain was not supported by the objective medical evidence, but also found evidence of improvement after surgery.  *See Fletcher-Silvas v. Saul*, 791 F. App'x 647, 649 (9th Cir. 2019 (holding ALJ properly rejects a plaintiff's testimony where there is medical evidence of improvement after a surgery).  In sum, the ALJ found the objective medical record and improvement in plaintiff's conditions following surgery were inconsistent with plaintiff's testimony.  The ALJ offered clear and convincing reasons, supported by substantial evidence, for discounting plaintiff's statements regarding the limiting effect of her neck and arm symptoms.

### B.      Carpal Tunnel Syndrome

Regarding plaintiff's carpal tunnel symptoms, the ALJ found:

> Electromyography studies in August 2016 revealed moderately severe carpal tunnel syndrome with chronic cervical radiculopathy.  More recently, nerve conduction studies in May 2018 showed moderate bilateral carpal tunnel syndrome.  She has not been recommended for surgical release, she has not reported significant functional problems to treating sources, and no treating or examining source has recommended significant gross or fine manipulative limitations.

Tr. 22 (citing Tr. 1015-22).  The ALJ not only rejected plaintiff's symptom testimony because it was not supported by the objective medical evidence, but also rejected it because "[plaintiff] has not reported significant functional problems to treating sources."  Tr. 22.  A claimant's inconsistent or non-existent reporting of symptoms is competent evidence for an ALJ to consider in assessing subjective symptom testimony.  *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir.

2006) (finding that claimant never reported problems related to carpal tunnel syndrome was a clear and convincing reason to reject his testimony).  Thus, the ALJ provided clear and convincing reasons, supported by substantial evidence, to reject plaintiff's testimony as to limitations caused by carpal tunnel syndrome.

### C.    COPD/Asthma

With regard to plaintiff's COPD/asthma, the ALJ summarized plaintiff's testimony as follows:

> The claimant . . . testified that she has experienced gradually worsening COPD, and was recently hospitalized in December 2017.  She noted that she requires hospitalization due to infections and pneumonia causing exacerbations of her asthma and COPD almost every year, primarily in the winter due to cold weather, but also sometimes due to summer seasonal allergies.  She stated she is treated with steroids, asthma medication, and antibiotics.  When she is at home, her asthma medication and rescue inhaler are generally effective, and she noted she uses her inhaler and nebulizer six times per day each at regular intervals.  The claimant expressed that she lacks energy and stamina when her asthma and COPD are triggered, and that during these times she is unable to attend to her own personal care, and friends help with caring for her children.  She noted that she does lung therapy (walking on a treadmill or using foot pedals while sitting) for 20 minutes at a time with Dr. Cho.  The claimant acknowledged that she smokes cigarettes, stating that she previously quit but then resumed smoking, and that she is planning to quit again.

Tr. 19; *see* Tr. 51-57.

While acknowledging "the claimant requires treatment for exacerbation of symptoms" the ALJ rejected plaintiff's symptom testimony for several reasons, which are addressed in turn.[3]

---

[3] Regarding plaintiff's asthma/COPD, the ALJ stated: "Despite her reported symptoms, the claimant continues to smoke, and while she testified that she plans to quit, this intention is also reflected throughout the treatment record."  Continued smoking *may* be a reason to discount testimony of worsening COPD symptoms.  *See Newberry v. Astrue*, No. CIV. 09-648-ST, 2011 WL 588935, at *7 (D. Or. Feb. 10, 2011) ("The ALJ also cited Newberry's continued smoking in finding his testimony regarding his worsening COPD not credible. . . . Such a citation is appropriate.") (citing *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2007)"; *but see Hatcher v. Astrue*, No. CV 08-00042-OP, 2009 WL 1110545, at *5 (C.D. Cal. Apr. 21, 2009) ("An addiction to cigarettes, however, should not serve to discredit Plaintiff's description

### 1.    Objective Medical Evidence

The ALJ discredited plaintiff's testimony, in part, because "the frequency and need for hospitalization she alleged is not consistent with the record." Tr. 23. The ALJ observed that plaintiff testified she required hospitalization "almost every year." Tr. 19; *see* Tr. 51 (testifying she went to the hospital almost every year in the winter time). But the ALJ also observed that plaintiff had been hospitalized four times in four years: (1) July 26-28, 2015, "for acute exacerbation of asthma with respiratory failure"; (2) February 11-15, 2016, "for COPD exacerbation with acute lower respiratory infection"; (3) December 27, 2017-January 4, 2018, "for respiratory failure secondary to the flu, . . . requir[ing] extended hospitalization due to severe sepsis with acute organ dysfunction"; and (4) January 19-24, 2018, for rehospitalization "due to increasing shortness of breath." Tr. 22-23 (citing Tr. 301-22, 454-78, 1050-1309, 1557-61). Thus, the "frequency and need for hospitalization alleged" by plaintiff is in fact consistent with the medical record.

The ALJ also observed that, "as noted by Dr. Cho, the claimant's breathing is stable when she is not dealing with illness. . . . Tr. 23. However, "the stability of a condition does not undermine a plaintiff's allegations as to the intensity, persistence, or limiting effects of the symptoms of a condition." *Marti Jean K. v. Comm'r Soc. Sec. Admin.*, No. 6:18-cv-00109-HZ, 2019 WL 3061561, at *7 (D. Or. July 10, 2019). Rather, "stable" may simply mean that a

---

of his impairments.") (citing *Bray,* 554 F.3d at 1227). However, the court need not address this issue because, although the Commissioner argues the ALJ found plaintiff's smoking was brought on by situational stressors which then triggered COPD symptoms, the ALJ did not provide this reason in her opinion, and the court is not permitted to make ad hoc rationalizations for the ALJ. *Stout v. Comm'r Soc. Sec. Admin*, 454 F.3d 1050, 1054 (9th Cir. 2006) (a reviewing court cannot affirm an ALJ's decision denying benefits on a ground not invoked by the ALJ herself) (citation omitted).

plaintiff's alleged symptoms are not getting worse. *Timothy S. v. Comm'r*, No. 6:17-cv-02043-HZ, 2019 WL 2006689, at *7 (D. Or. May 3, 2019). Moreover, even assuming "[plaintiff's] breathing is stable as long as she is not sick[,]" Tr. 23 (citing Tr. 527), the record does not reflect that she was free from symptoms, or, importantly, that the stability contradicted her symptom testimony.

Thus, the ALJ's reasons for rejecting plaintiff's testimony based on a conflict with the objective medical record were not clear and convincing reasons supported by substantial evidence.

### 2. Effective Treatment

The ALJ also rejected plaintiff's testimony because "the record shows that illnesses exacerbating the claimant's respiratory condition are generally responsive to treatment." Tr. 23. An ALJ may discount a claimant's testimony based on effective treatment. *Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). However, evidence of improvement with treatment does not automatically negate a plaintiff's claimed symptoms or functional limitations. *See Moore v. Comm'r, Soc. Sec. Admin.*, 278 F.3d 920, 924-25 (9th Cir. 2002).

The ALJ correctly noted instances where plaintiff's symptoms were "responsive to treatment." Tr. 22-23 (citing Tr. 301-22 (symptoms resolved quickly with nebulizer therapy, prednisone, and oxygen, July 2015 hospital visit), 909-12 (treated with antibiotics and adjustment of medications, June 2016 office visit), 1597 (treated with nebulizer treatment with oxygen and improved significantly, September 2016 office visit). The ALJ was required, however, to examine this evidence in the broader context of plaintiff's impairment. *See Holohan*

*v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). An ALJ cannot simply "pick out a few isolated instances of improvement over a period of months or years" but must interpret "reports of 'improvement' . . . with an understanding of the patient's overall well-being and the nature of her symptoms." *Garrison*, 759 F.3d at 1017. In short, the examples an ALJ chooses "must *in fact* constitute examples of a broader development." *Id.* at 1018 (emphasis added).

The record demonstrates that any response to treatment was not sustained. In addition to the four hospital visits described above, plaintiff presented to immediate care due to exacerbation of symptoms numerous times. *E.g.*, Tr. 740-43 (June 28, 2016), 1597-1600 (September 21, 2016), 1592-95 (October 19, 2016), 1552-56 (December 12, 2016), 1585-90 (March 26, 2017), 1495-1504 (April 30, 2017), 1472-76 (August 21, 2017), 1447-51, 1456-61 (October 17, 2017), 1360-65 (March 8, 2018). Plaintiff also visited the emergency room frequently for same. *E.g.*, Tr. 358 (September 7, 2015), 777 (December 15, 2015), 764 (January 2, 2016), 690-95 (January 23, 2016), 755 (January 29, 2016), 1316-17 (January 7, 2018). The record further documents instances where plaintiff visited her primary care physician, Dr. Barrett, and pulmonologist, Dr. Cho, for treatment for symptom exacerbation. *E.g.*, Tr. 955-58 (September 23, 2015 office visit to Dr. Barrett); Tr. 1557-62 (November 21, 2016 office visit to Dr. Cho). In short, any time plaintiff's symptoms may have improved, she suffered an exacerbation of symptoms soon thereafter. Thus, substantial evidence does not support the ALJ's conclusion that plaintiff's improvement with treatment undermines her subjective symptom testimony.

### 3.    Conservative Treatment

The ALJ rejected plaintiff's testimony because "[t]he record does not show she requires frequent use of her rescue inhaler and nebulizer throughout the day when she is not ill, and she is generally treated conservatively." Tr. 23.

An ALJ may also discount a claimant's testimony based on conservative treatment. *Parra*, 481 F.3d at 750-51 (citation omitted). Here, the ALJ noted that plaintiff's treatment when symptoms of exacerbation were not present included encouragement to stop smoking and lose weight, lung and physical therapy, and occasional use of a nebulizer and/or inhaler. Tr. 22-23 (citing Tr. 454-62, 527, 530, 925, 1439-40, 1445-46, 1455-56, 1563, 1575, 1595). If these were the only treatments that plaintiff had received, then her course of treatment arguably could be described as conservative. *See, e.g.*, *Tommasetti*, 533 F.3d at 1040 (physical therapy is conservative treatment); *Teresa M. v. Comm'r Soc. Sec. Admin.*, No. 6:17-CV-00466-MA, 2018 WL 3600058, at \*9 (D. Or. July 27, 2018) (prescribed inhalers and a nebulizer on an as needed basis to treat asthma and COPD is conservative treatment); *Hayes v. Colvin,* 2014 WL 7405647, at \*3 (D. Or. Dec. 30, 2014) (prescription anti-inflammatory medication, pain medication, aerosol inhalers, and a recommendation to quit smoking is conservative treatment).

However, in considering plaintiff's treatment only when she is free from symptoms, the ALJ failed to consider the full longitudinal record of her treatment, including her treatment when she was not free from symptoms. *Holohan*, 246 F.3d at 1205, 1208 (holding ALJ erred by selectively reading treatment records). The record shows that when plaintiff's symptoms exacerbated, she was repeatedly treated with prescriptions for steroids and antibiotics. *E.g.*, Tr. 325, 459, 519, 541, 743, 755, 777, 980, 1142, 1316, 1365, 1417, 1461, 1476, 1499, 1557, 1590, 1595; *see Kager v. Astrue*, 256 F. App'x 919, 923 (9th Cir. 2007) (cited pursuant to Ninth Cir. Rule 36-3) (rejecting ALJ's characterization of treatment as conservative where, *inter alia*, claimant took prescription medications). She also routinely received bronchodilator treatment and oxygen therapy. *E.g.*, Tr. 464-65, 980, 1193, 1316, 1600; *cf. Duane S. v. Comm'r Soc. Sec. Admin*, No. 6:19-CV-01795-JR, 2020 WL 7181586, at \*5 (D. Or. Dec. 7, 2020) (ALJ properly

rejected plaintiff's testimony where "plaintiff sought only conservative treatment for his COPD, failing to seek continuous oxygen therapy, ventilation therapy, and surgery").  Further, plaintiff was noted for "chronic" use of her inhaler, and she was prescribed many different inhalants and related medications.  Tr. 325, 358, 541, 911.  During hospitalizations, plaintiff required ventilators, intubation, and intravenous therapy.  Tr. 1141-42, 1193.  There is substantial evidence, then, that plaintiff's treatment was far from conservative.  Thus, conservative treatment is not a clear and convincing reason for discounting plaintiff's subjective symptom testimony.

### 4.    Activities of Daily Living

Finally, the ALJ rejected claimant's claims that she "lacks energy and stamina when her asthma and COPD are triggered, and that during these times she is unable to attend to her own personal care, and friends help with caring for her children."  Tr. 19.  Specifically, the ALJ found:

> The claimant has reported she is independent with activities of daily living and is able to attend to the care of her two young children.  She stated she receives help taking care of her kids from friends on occasions when her symptoms are severe. Otherwise, she prepares meals, does the dishes, cleans the house, and goes grocery shopping.

Tr. 24.

An ALJ may invoke activities of daily living in the context of determining symptom allegation credibility to (1) illustrate a contradiction in previous testimony, or (2) demonstrate that the activities meet the threshold for transferable work skills.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).  Here, the ALJ failed to invoke either basis, i.e., the ALJ provided no explanation why childcare, preparing meals, doing the dishes, cleaning the house, and going grocery shopping were either inconsistent with plaintiff's subjective symptom testimony or

translated to activities that could be performed within a competitive work environment.[4]  *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits," and "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.").  Plaintiff's attempts at leading a normal life do not prevent her from receiving disability benefits.  *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (holding a "claimant need not vegetate in a dark room to be eligible for benefits") (citation omitted).

Also, importantly, the ALJ did not address plaintiff's testimony detailing the difficulties she experiences when performing activities of daily living.  For example, plaintiff testified that doing the dishes takes about 20 minutes and "increases her symptoms." Tr. 55.  She also testified that when she "is experiencing an exacerbation of [her] asthma[,]" she has "a friend that comes over and helps her" because "[she] can[not] do everything [she] need[s] to do unassisted––for [her children]—if [she's] experiencing an exacerbation."  *Id*.

In sum, the ALJ did not give clear and convincing reasons, supported by substantial evidence, for discounting plaintiff's asthma/COPD subjective symptom testimony.

## II.    Medical Opinion Evidence

The ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ must provide clear and

---

[4] The Commissioner invokes the former, arguing plaintiff's testimony that she takes care of her children conflicts with her contention that she lacks stamina and energy.  Def. Br. 17 (citing Tr. 19, 23, 56, 1026).  The ALJ, however, does not provide this explanation in her opinion, and the court is not permitted to make ad hoc rationalizations for the ALJ.  *Stout*, 454 F.3d at 1054 (9th Cir. 2006).

convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012).  Additionally, the ALJ may discount physicians' opinions based on internal inconsistencies, inconsistencies between their opinions and other evidence in the record, or other factors the ALJ deems material to resolving ambiguities.  *Morgan v. Comm'r, Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).

### A.    Dr. Daniel Barrett

On April 19, 2018, Dr. Barrett, plaintiff's primary care physician, provided a "Treating Source Statement."  Tr. 1630-34.  Dr. Barrett diagnosed severe persistent asthma, COPD, gastroesophageal reflux disease, obesity, fibromyositis, dyspnea, and adjustment disorder.  Tr. 1630.  Dr. Barrett opined that in an eight-hour workday, plaintiff can walk half a city block without rest or significant pain; can sit for 20 minutes at a time; can stand/walk for 15 minutes at a time; requires a job that permits shifting positions at will "but for short times"; would need to take unscheduled, half-hour breaks every 20 minutes; cannot lift more than ten pounds; is limited in handling and fingering bilaterally; can use her arms for reaching 100 percent, her hands for grasping 95 percent, and her fingers for fine manipulation 80 percent of the workday; would require breaks after using her hands; would need to periodically elevate her legs; and would miss more than four workdays per month.  Tr. 1632-34.

The ALJ assigned "partial weight" to Dr. Barrett's opinion, finding Dr. Barrett's opinions as to plaintiff's "extreme exertional limitations and expectation of significant absences is not

supported by the evidence." Tr. 25. In support, the ALJ observed that "[w]hile [plaintiff's] conditions resulted in two hospitalizations for serious symptoms recent to [Dr. Barrett's] opinion, [her] asthma/COPD during the period under review has been generally controlled between infrequent infections, and as of Dr. Barrett's opinion, the record shows [plaintiff'] conditions were stable." *Id.* However, as described above, plaintiff's infections were neither infrequent nor controlled. *See supra* Sect. II.B (listing 23 documented exacerbations), Sect. II.C (describing plaintiff's treatment).

The ALJ also discounted Dr. Barrett's exertional limitations and absences opinions because Dr. Barrett had described plaintiff's conditions as "stable." Tr. 25; *see* Tr. 1623 (treatment note from Dr. Barrett stating: "She is stable with her asthma."). "A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider." *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (citations omitted). Here, however, the ALJ chose one of Dr. Barrett's notes describing plaintiff's symptoms as "stable," while ignoring other notes to the contrary. *E.g.*, Tr. 942 ("She has asthma and bronchitis that is not well controlled."); 955 ("The patient states she has been doing poorly with her asthma control since the last visit."). The ALJ's characterization of plaintiff's symptoms as "stable" "constitutes impermissible cherry-picking" because "an ALJ must consider all of the relevant evidence in the record and may not cite only those portions of the record that bolster his findings." *Walker v. Astrue*, No. 3:11-CV-990-AA, 2012 WL 3962310, at *4 (D. Or. Sept. 7, 2012); *see also Robinson v. Barnhart,* 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability."). Morever, as plaintiff correctly observes, "stable" does not mean "resolved." Pl. Br. 23 (citing Taber's Online

Cyclopedic Medical Dictionary (23d ed. 2018)); *see also Kirk M. v. Comm'r Soc. Sec. Admin.*, No. 6:17-CV-01663-HZ, 2018 WL 6651525, at *4 (D. Or. Dec. 19, 2018) ("[A]lthough Dr. Gil noted that Plaintiff's glaucoma was "stable," stable does not mean resolved."). In short, substantial evidence does not support the ALJ's determination that Dr. Barrett's assessments were inconsistent with the medical record and, therefore, the ALJ's partial rejection of his opinion was error.

### B.    Dr. Susan Cho

On May 8, 2018, Dr. Cho signed a concurrence letter stating she was treating plaintiff for COPD. Tr. 1635. Dr. Cho opined plaintiff "is capable of being more active when she is not experiencing significant symptoms"; "experiences exacerbations of her condition that are severe enough to prevent her from functioning, including the ability to go to work"; "experiences more exacerbations in the winter than summer due to exposure to cold, and to more illnesses"; experiences "some exacerbations in the summer that are caused by her allergies"; "[w]hen she becomes sick, she does not recover as quickly as other people"; and "[she] would be absent more than one workday per month on average due to exacerbations of her COPD." Tr. 1635.

The ALJ assigned partial weight to Dr. Cho's opinion, finding "the evidence shows [plaintiff] will miss work when she experiences significant exacerbations of COPD, but does not find this amounts to one day per month." Tr. 24. To support this conclusion, the ALJ noted: "Taken as a whole, the record shows the claimant's symptoms are generally stable with occasional exacerbations that respond to adjustments in medication, and infrequently requiring hospitalization." Tr. 24-25.

As described above, plaintiff's exacerbations were neither occasional, nor did they respond to adjustments in medication. *See supra* Sect. II.B. (listing 23 documented

exacerbations).  Thus, the ALJ relied on the same flawed reasons she used to reject plaintiff's subjective symptom testimony, and, accordingly, the ALJ did not properly evaluate Dr. Cho's opinion.

### III.    RFC

The RFC is the most a person can do, despite her physical or mental impairments.  20 C.F.R. §§ 404.1545, 416.945.  In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony.  *Id.*; SSR 96-8p, *available at* 1996 WL 374184.  In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC.  *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).  Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the vocational expert.

The Commissioner, however, uses the special psychiatric review technique to evaluate mental impairments at steps two and three of the sequential process with respect to activities of daily living, social functioning, concentration, persistence, or pace, and episodes of decompensation of extended duration.  20 C.F.R. § 404.1520a(c).  While the results of the special psychiatric review technique are distinct from the RFC assessment, a doctor may translate the psychiatric review technique findings into concrete workplace limitations, which the ALJ may adopt into the RFC.  *Stubbs-Danielson*, 539 F.3d at 1174-75.

Plaintiff argues that the ALJ erred in failing to evaluate her medically determinable mental impairments of depression and anxiety, resulting in an incomplete RFC.[5]  Pl. Br. 4-8.  At step two, the ALJ noted the claimant did not allege mental limitations "other than 'difficulty handling stress.'"[6]  *Id.*; *see* Tr. 206-07.  The ALJ further noted "the record reflects that the claimant has reported various situational stressors (finances, relationship issues, and concerns over her daughter's health)" and "chart notes clearly delineate that [claimant's diagnosed anxiety and depression] are situational."  *Id.* (citing Tr. 516, 526, 540-41, 904-98, 986, 1034, 1360-1618).  The ALJ also noted that plaintiff's documented situational stressors "predate the alleged onset date, when [she] was working successfully."  Tr. 15 (citing Tr. 986).

The ALJ observed that Alan Schrader, LCSW, who "assessed adjustment disorder with anxious mood and stress due to marital problems[,]" indicated "normal mental status findings" and "full activities of daily living" in October and November 2016 treatment notes.  Tr. 15-16 (citing Tr. 1026-36).  The ALJ also observed that Linda Henderson, MSW, who assessed post-traumatic stress disorder, indicated "normal" mental status examination findings in late 2017.  *Id.* at 16 (citing Tr. 1036-49).  Further, the ALJ observed "that no acceptable medical source who is

---

[5] The Commissioner argues plaintiff has waived this argument because she "[did] not attempt to show the ALJ erred at step two."  Def. Br. 4 (citing *Ball v. Massanari*, 254 F.3d 817, 823 (9th Cir. 2001) ("It follows that if the claimant's ailment does not pass step 2, *ipso facto* it is not disabling.")).  *Ball* is distinguishable because, there, the court found that because "Ball could not proceed past step two of the evaluation process, . . . there was no need explicitly to consider whether the condition, standing alone, would be disabling."  *Id.* at 822.  Here, in contrast, although the ALJ did not find plaintiff's anxiety and depression severe at step two, the ALJ did find plaintiff could proceed past step two.  *See* Tr. 15-17.

[6] Plaintiff argues that, to the contrary, she did report mental limitations "but she indicated that her greatest limitations were physical."  Pl. Br. 6 (citing Tr. 201-07).  Even assuming plaintiff alleged mental limitations, as discussed herein, the court concludes that the ALJ adequately assessed plaintiff's mental impairments at step two.

qualified to make psychological diagnoses has assessed the claimant."  Tr. 16.  The ALJ noted

that although plaintiff's providers had prescribed medication for plaintiff's anxiety and

depression, "[c]hart notes do not reflect mental status examinations or other assessments."  Tr.

15; *see* Tr. 310, 318, 346, 540, 544, 548, 918, 1120, 1490.  Indeed, the ALJ stated, "[t]he only

other note" pertaining to plaintiff's mental health "is from February 2018, when [plaintiff]

presented to the emergency department requesting a psychiatric evaluation for anxiety and

depression[,]" where "[s]he was evaluated for safety and referred for follow up with her primary

care physician for medications and/or counseling."  *Id.* (citing Tr. 1028, 1320-22, 1038); *see*

*Thune v. Astrue,* 499 F. App'x 701, 703 (9th Cir. 2012) (upholding ALJ's determination that

claimant's depression was "not severe" when treating physician recorded in treatment notes that

she was depressed and prescribed her anti-depressants but did not identify any functional

limitations resulting from this diagnosis).

Moreover, the ALJ found "[plaintiff] reported that she attends to personal care, the care

of her children, grocery shopping, management of household finances, meal preparation, and

housecleaning" and also that "she has no problems following instructions or paying attention."

Tr. 16; *see* Tr. 201-07.  For these reasons, the ALJ did not err by declining to find plaintiff's

mental impairments severe at step two.

### A.    State Agency Review Psychologists

Plaintiff contends the ALJ erroneously ignored the opinions of state agency reviewing

psychologists, Dr. Megan Nicoloff and Dr. Scott Kaper.  Pl. Br. 7-8.

"[I]n interpreting the evidence and developing the record, the ALJ does not need to

discuss every piece of evidence," only that which is significant and probative.  *Wolff v. Barnhart*,

341 F.3d 1006, 1012 (9th Cir. 2003) (internal quotation marks omitted); *see also Vincent v.*

*Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam).  However, although ALJs "are not

bound by findings made by State agency or other program physicians and psychologists, . . . they

may not ignore these opinions and must explain the weight given to the opinions in their

decisions."  Social Security Ruling ("SSR") 96–6p, *available at* 1996 WL 374180, at *2; *see also*

20 C.F.R. §§ 404.1527(f), 416.927(f).  Moreover, as noted above, the court "must consider the

entire record as a whole, weighing both the evidence that supports and the evidence that detracts

from the Commissioner's conclusion."  *Lingenfelter,* 504 F.3d at 1035 (internal quotation marks

omitted).

Here, the ALJ ignored the medical opinions of the nonexamining state agency

psychiatrists, and, therefore, erred.  *See* Tr. 13-22.  However, it is well-established that "[a]

decision of the ALJ will not be reversed for errors that are harmless."  *Burch v. Barnhart*, 400

F.3d 676, 679 (9th Cir. 2005).  An ALJ's error may be deemed harmless where it "was

inconsequential to the ultimate nondisability determination."  *Stout*, 454 F.3d at 1055.

### 1.    Dr. Scott Kaper

On reconsideration, Dr. Kaper assessed plaintiff's "Medically Determinable Impairments

and Severity" ("MDI").  Tr. 89-90.  Dr. Kaper opined plaintiff's medically determinable

impairments, i.e., "Affective Disorders" and "Anxiety-Related Disorders," did not meet or

medically equal any of the listings criteria and would cause "mild": "Restriction of Activities of

Daily Living"; "Difficulties in Maintaining Social Functioning"; and "Difficulties in Maintaining

Concentration, Persistence, or Pace."  Tr. 90.  He noted that the "[mental residual functional

capacity assessment] given at initial level does not appear necessary"; plaintiff reported "that she

has become more depressed as she has struggled w/ pain, but [this is] not reflected in [medical

evidence of record]"; "[mental symptoms] still functionally [not severe]"; and "[e]vidence

supports Initial Decision." *Id.*

The ALJ acknowledged plaintiff suffered from depression and anxiety, but ultimately

concluded these impairments were "nonsevere." Tr. 16. Dr. Kaper's opinion does not contradict

the ALJ's findings, and, therefore, the ALJ's failure to explicitly consider or discredit his opinion

is harmless.

### 2.   **Dr. Megan Nicoloff**

Dr. Nicoloff assessed both plaintiff's MDI and RFC. Tr. 74-75, 78-80. In her MDI

report, Dr. Nicoloff concluded that plaintiff's "Affective Disorders" and "Anxiety Disorders" did

not meet any of the listings criteria and would cause "moderate" difficulties in maintaining

"Social Functioning" and "Concentration, Persistence or Pace." Tr. 75. In her "Mental Residual

Functional Capacity Assessment," Dr. Nicoloff opined plaintiff was "moderately limited" in her

"ability to understand and remember detailed instructions," explaining that "[plaintiff] is capable

of understanding/remembering simple instructions" but "would be incapable of

understanding/remembering more complex instructions [due to symptoms] of affective

[disorder]." Tr. 78. She also opined plaintiff is "moderately limited" in the "ability to carry out

detailed instructions[,]" explaining "[plaintiff] can carry out and maintain [concentration,

persistence, and pace] for simple tasks" but "would be unable to maintain [the same] for more

complex tasks [due to symptoms] of anxiety [disorder]." Tr. 79. Dr. Nicoloff further opined

plaintiff is "moderately limited" in her "ability to interact with the general public," explaining

that "[she] is capable of appropriate coworker and supervisor interaction" but "would be

incapable of greater than occasional general public contact [due to symptoms] of anxiety

[disorder]." *Id.*

The Commissioner argues any error in ignoring Dr. Nicoloff's opinion is harmless because even if Dr. Nicoloff's opinion is credited, plaintiff can still perform at least one of the jobs the ALJ found she could perform at step five, i.e., document preparer.  DOT # 249.587-018, *available at* 1991 WL 672349.  Document preparer has a specific vocational preparation ("SVP") of 2, which corresponds to unskilled work.  *Id.*; *see* Social Security Ruling (SSR) 00-4p, *available at* 2000 WL 1898704, at *3.  The mental activities generally required by unskilled work include:

> * Understanding, remembering, and carrying out simple instructions.
>
> * Making judgments that are commensurate with the functions of unskilled work—i.e., simple work- related decisions.
>
> * Responding appropriately to supervision, co-workers and usual work situations.

SSR 96-9p, *available at* 1996 WL 374185, at *9 (emphasis added).

Dr. Nicoloff indicated plaintiff "is capable of understanding/remembering simple instructions," "can carry out and maintain [concentration and persistence] for simple tasks," and "is capable of appropriate co-worker and supervisor interaction."  Tr. 78-79.  These opinions do not conflict with the ALJ's finding that plaintiff could perform the job of document preparer. Further, as to Dr. Nicoloff's opinion that plaintiff "would be incapable of greater than occasional general public contact," the VE testified a "person . . . limited to occasional public contact" could still perform the job of document preparer.  Tr. 63, 79.  Therefore, the ALJ's step five opinion that plaintiff can perform the position of document preparer does not conflict with Dr. Nicoloff's opinion.  *See* 20 C.F.R. §§ 404.1566(b), 416.966(b) ("Work exists in the national economy when there are a significant number of jobs (*in one or more occupations*) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications.") (emphasis added); *Tommasetti*, 533 F.3d at 1044 (while the ALJ erred at step four by finding the

claimant could perform past work, this error was harmless because the ALJ properly found the claimant could perform work as a semiconductor assembler at step five); *Garner v. Saul*, 805 F. App'x 455, 459 (9th Cir. 2020) (finding that one job existing in significant numbers is sufficient in a step five finding).  Any error that the ALJ committed in failing to mention Dr. Nicoloff's opinion in the decision is harmless.

## IV.    Remand

When a court determines the Commissioner erred in some respect in making a decision to deny benefits, the court may affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing."  *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting 42 U.S.C. § 405(g)).  In determining whether to remand for further proceedings or immediate payment of benefits, the Ninth Circuit employs the "credit-as-true" standard when the following requisites are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully developed and further proceedings would serve no useful purpose, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand.  *Garrison*, 759 F.3d at 1020.  Even if all of the requisites are met, however, the court may still remand for further proceedings, "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]"  *Id.* at 1021.

Here, the first requisite of the *Garrison* test is met, as the ALJ failed to properly evaluate plaintiff's subjective symptom testimony as to her asthma/COPD and the medical opinions of Dr. Barrett and Dr. Cho.

However, the second requisite is not met, as the record in this case is not fully developed. Where the ALJ failed to properly consider the opinions of Dr. Barrett and Dr. Cho, remand is the

most appropriate remedy.  *See Treichler*, 775 F3d at 1105 ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").  "There may be evidence in the record to which the ALJ can point to provide the requisite specific and legitimate reasons for disregarding the opinions of [Dr. Barrett and Dr. Cho].  Then again, there may not.  In any event, the ALJ is in a better position than this court to perform the task."  *Crumly v. Astrue*, No. CV-08-674-TUC-RCC, 2010 WL 3023349, at *22 (D. Ariz. June 15, 2010), *report and recommendation adopted,* 2010 WL 3023339 (D. Ariz. July 30, 2010).  Moreover, even if the improperly-rejected opinions are credited as true, it is not clear that the ALJ would be required to find plaintiff disabled because the VE did not provide an opinion as to whether plaintiff would be able to perform jobs that exist in significant numbers in the national economy when taking into account all of plaintiff's limitations.

On remand, the ALJ must (1) accept plaintiff asthma/COPD testimony or provide legally sufficient reasons for rejecting it, (2) accept the opinions of Dr. Barrett and Dr. Cho or provide legally sufficient reasons for rejecting them, (3) obtain additional VE testimony regarding what work plaintiff can do, if any, and (4) conduct any additional proceedings as indicated by the results of the foregoing.

## ORDER

The Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

DATED  March 24, 2021.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge